1
2
3
4
5
6
7
8

**UNITED STATES DISTRICT COURT**

9

**EASTERN DISTRICT OF CALIFORNIA**

10

11 | UNITED STATES OF AMERICA,

Case No. 1:22-cr-00198 JLT

12 |         Plaintiff,

ORDER DENYING EX PARTE MOTION TO CONTINUE THE SURRENDER DATE

13 |     v.

(Doc. 23)

14 | JANARDHAN GRANDHE,

15 |         Defendant.

16

17          Before the Court is Janardhan Grandhe's request to extend his self-surrender date by

18 | one year. (Doc. 23) Because the Court does not find exceptional circumstances exist to delay

19 | the defendant's self-surrender date, the request is **DENIED**.

20 | **I.      Dr. Granhde fails to demonstrate exceptional circumstances necessary for**

21 |         **an extension of time to self-surrender**

22          Janardhan Grandhe is a medical doctor who specializes in non-opioid pain management. (Doc.

23 | 8 at 12) He has pleaded guilty to one count of tax evasion (26 U.S.C. § 7201). The factual basis for his

24 | plea demonstrates that he devised a scheme in which he required employees to cash checks he issued

25 | to them, purportedly to reimbursement them for various employment-related expenses, and then return

26 | the cash to him. (Doc. 8 at 12) He also diverted business receipts to his personal bank accounts and, in

27 | doing so, failed to account for this money as income. *Id*. In tax years 2017 through 2019, he evaded

personal tax liability in the amount of $309,387. *Id.*

The Court sentenced Dr. Grandhe on April 24, 2023 to 12 months and 1 day in prison. (Doc. 21) In doing so, the Court followed the recommendation in the presentence report and varied downward, due in no small part on the medical service Dr. Grandhe provides to the identified underserved community. (Doc. 17-1; Doc. 17-4) In refusing to impose the government's recommended sentence of 24 months (Doc. 19), the Court relied upon Dr. Grandhe's representation that any term of incarceration would result in the Medical Board "summarily suspend[ing]" him from the practice of medicine (Doc. 20 at 8; Doc. 17-4 at 25-26), which the Court felt was a significant punishment.

Because Dr. Grandhe required his employees to participate in his unlawful scheme, which subjected them to potential criminal liability, and because the Court could find no explanation for his crime—other than plain greed—the Court determined that the custodial sentence was appropriate. Based on the value that Dr. Grandhe provided to the community and based on the anticipated medical license suspension, the Court determined that incarceration of 12 months and one day was reasonable and sufficient but not greater than necessary to achieve the statutory purposes of sentencing. (18 U.S.C. § 3553(a).) In addition, the Court granted Dr. Grandhe's request to delay his surrender date to July 5, 2023 (Doc. 21), during which time the Court anticipated Dr. Grandhe would take steps, to the extent he had not already, to arrange for the ongoing care of his remaining patients.

Now, just days before his deadline to surrender[1], he moves the Court to extend his surrender date by a year. (Doc. 23) Dr. Grandhe reports that this year-long extension would allow him to continue to treat his patients while training a colleague, Dr. Nath, to take over his clinics while Dr. Grandhe is in custody. (Doc. 23 at 3) However, Dr. Nath states explicitly that, "I do not intend to take over [Dr. Grandhe's] clinics, but rather serve the needs of his patients." (Doc. 23 at 297) Dr. Nath clarifies, that he "will only run the clinical aspects of [Dr. Grandhe's] practice and that [Dr. Grandhe] is  responsible for ensuring that he continues to have the necessary staff in place to run the managerial and support aspects of his offices, as he currently has in place." *Id*. On the other hand, in an effort to

---

[1] Due to the holiday weekend, including the Court's closure on June 3 and 4, this last-minute filing leaves the Court little time to address his request and requires it to drop its other pressing work and devote itself to it entirely.

persuade the Court to impose probation rather than incarceration, Dr. Grandhe represented to the Court that his license to practice medicine would be "summarily" suspended. (Doc. 20 at 8; Doc. 17-4 at 25-26) Clearly, that has not occurred, nor can Dr. Grandhe expect it to occur within the next year or his proposal of using the next year to train Dr. Nath would make little sense.

On the other hand, Dr. Grandhe offers a letter from Dr. Lo, who is a pain management expert with more than 22 years of medical experience. (Doc. 23 at 12-15) Dr. Lo concludes that "Dr. Grandhe was the sole interventional pain management specialist in the Fresno[2], Bakersfield, and Tulare[3] areas." (Doc. 23 at 12) Dr. Lo reports that 100 of Dr. Grandhe's patients have one of three types of insurance, which only Dr. Grandhe accepts in these communities. *Id.* Dr. Lo reports that, "Many of these patients have had long term exposure and a history of dependence on prescription pain medications, often predating their first consult with a comprehensive pain specialist." *Id.* 13. Dr. Lo notes that these patients will likely turn to street drugs and, "As seen with the current fentanyl crisis, there is obviously no reliability, standardization, or quality assurance with drugs that are purchased on the street. These drugs often contain unknown substances and impurities which are acutely life threatening. Even if a patient is able to have access to prescription medications under the care of their primary care physician, the absence of a trained comprehensive interventional pain specialist who is directing the care and treatment of the chronic pain patient will still pose a serious risk to the patient." *Id.* at 14.

The Court is confused by this statement because previously, the Court was advised by Dr. Grandhe that he "specialized in non-opioid pain management." Unfortunately, Dr. Lo does not report how many patients Dr. Grandhe prescribed opioid medications by the particular details about their care or treatment options, so the Court cannot fully evaluate the situation.

---

[2] The Court is unclear whether Dr. Lo is indicating that Dr. Grandhe is the sole provider in these areas or the only provider who accepts the particular insurance coverage at issue. Likewise, the Court is uncertain if Dr. Lo is opining that Dr. Grandhe is the only such provider in Tulare, Bakersfield and Fresno or only in the first two cities. Initially, he says that Dr. Grandhe *is* the "sole interventional pain management specialist in the Fresno" (Doc. 23 at 12), but then he states, "Since Dr. Grandhe is the sole interventional pain specialist approved to see patients residing **in Tulare and Bakersfield areas**, these patients are unable to receive such medical treatment elsewhere. Even **if these patients were to see someone in Fresno,** since those doctors are not approved for these specific patients located in Tulare and Bakersfield, the patients would have to pay out of pocket for treatment." *Id.* at 13, emphasis added.

[3] Previously, Dr. Grandhe reported that his clinics were in Visalia, Bakersfield and Fresno. (Doc. 20 at 16) Thus, the Court is not sure if Dr. Lo is intending to refer to the entirety of Tulare County or if should have been evaluating the City of Visalia.

On the other hand, Dr. Lo explains that training, such as that proposed by Dr. Grandhe, usually will take between six and 12 months to complete. (Doc. 23 at 14.) He reports that those with an anesthesiology background will need less training than those without it. *Id.* at 14-15. However, as to Dr. Nath, Dr. Lo opines that it would take "a minimum of one-year full-time training to properly train this doctor to do the work that Dr. Grandhe does" (*Id*. at 15), though Dr. Lo does not explain why. The Court is particularly perplexed because Dr. Nath has been working with Dr. Grandhe "as an interventional pain fellow" since 2020.

Given these evidentiary concerns, the Court agrees with the government's opposition papers. First, though Dr. Lo provides information that poses great concerns for the Court about what will become of Dr. Grandhe's patients, he does not explain whether there are alternatives in neighboring cities or whether public hospitals or other clinics that serve low-income communities can provide the needed care. For example, he seems to indicate that there *are* treatment options in Fresno (*See* fn. 2), though the patients may be required to pay out-of-pocket for them. The Court wonders, given the City of Los Angeles is 90 miles from Bakersfield, whether there are in-network treatment options in that metropolis for these patients. The Court would be very surprised if there are not.

Second, the Court is greatly saddened that Dr. Grandhe failed to take more proactive steps to assure his patients' care. The civil audit, which was the starting point of this criminal action, occurred in 2021 and this criminal action was filed a year ago. (Doc. 19 at 4) Despite this, he took on new patients, including S.G. and I.L. (Doc. 23 at 300, 301) Likewise, despite knowing that the crime with which he was charged carried with it a term of imprisonment of up to 60 months (26 U.S.C. § 7201) and knowing for months that the probation officer was recommending a custodial term, he failed to use his time to train Dr. Nath sufficiently to take on these patients' care.

The Court is heartsick also that these desperate patients will have to return to the care providers they previously found insufficient or will take more dire actions. However, all of this is the consequence of Dr. Grandhe's decisions and his criminal actions. The fact that he is now just days away from his surrender date but still has not redirected his patients' care suggests that he has failed, even now, to appreciate the significance and seriousness of these proceedings.

1    Though the Court is deeply concerned about how Dr. Grandhe's conduct has and will impact

2    his patients, the Court does not find the extraordinary circumstances needed to further delay Dr.

3    Grandhe's surrender date. Consequently, his motion to extend his surrender date is **DENIED.**

4

5    IT IS SO ORDERED.

6    Dated:   **June 29, 2023**

     UNITED STATES DISTRICT JUDGE